DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal, Jeromy Irwin argues that his conviction for murder is against the manifest weight of the evidence because the State failed to prove that he intended to cause the victim's death. We disagree since Appellant was convicted of felony murder under R.C. 2903.02(B), which requires that the State prove that he caused the death of another as the proximate result of his committing or attempting to commit an offense of violence that is a felony of the first or second degree. To support the conviction under this statute, the State was not required to prove that Appellant intended to kill the victim but only that Appellant had the culpable mental state for the underlying felony. Because there is substantial evidence that Appellant committed felonious assault by knowingly causing physical harm to his victim, that he committed child endangering by recklessly abusing the victim, and that his commission of these felonies proximately caused the victim's death, Appellant's murder conviction is not against the manifest weight of the evidence.
 {¶ 2} Appellant also argues that the trial court abused its discretion by allowing the jury to view graphic autopsy photographs of the victim. We disagree because, while the pictures are gruesome, they demonstrate the severity of the injuries suffered by the victim and the danger of prejudice to Appellant did not substantially outweigh their probative value. Lastly, Appellant argues that his trial counsel was ineffective in that he failed to request an instruction on the lesser included charge of involuntary manslaughter. However, a request for an involuntary manslaughter instruction would have been inconsistent with the defense theory that the victim died as the result of an accident, i.e., that Appellant had no culpability at all for the victim's death. Because trial counsel employed sound trial strategy, his decision not to request a lesser included offense instruction was not ineffective assistance of counsel. Accordingly, we affirm Appellant's murder conviction.
 I. {¶ 3} Between 12:30 and 1:00 a.m. on July 7, 2002, Appellant appeared at his neighbors' trailer with his nine and one-half month old daughter, Journey, under his arm. Appellant informed his neighbors that Journey had fallen out of the back door of his trailer. Journey was barely breathing and her pulse was dropping. Appellant and his neighbors performed cardiopulmonary resuscitation ("CPR") on Journey while the neighbors' daughter called 911. Upon their arrival, the paramedics continued CPR on Journey and transported her to the hospital. Despite further efforts to revive her, Journey died that morning.
 {¶ 4} Appellant told an investigator that he had been watching television around 12:30 a.m. when Journey awoke and started crying. He removed Journey from her crib, brought her into his bedroom, and stood her at the end of his bed while he retrieved a shirt from his closet. Appellant heard the outside door open and turned around to discover that Journey was no longer in the room. Appellant heard a "thud" and, when he went to the back door, he found it open and Journey laying on the ground. He picked her up, put cold water on her head in an attempt to revive her, and then went to the neighbors for help.
 {¶ 5} An autopsy of Journey's body revealed that she died from blunt trauma to the head. While no trauma was visible on the outside of the head, the pathologist discovered a fine subdural hematoma, a blood vessel that burst due to a traumatic event. The pathologist also found a hairline fracture over Journey's left eye, as well as a hemorrhage in her eye and optic nerve and bruising on her left and right upper trunk. The pathologist concluded that either something struck Journey's head or her head struck an object; however, he was unable to determine whether her injuries were the result of a single or multiple impacts in the same area. He further concluded that the bruises on Journey's chest were probably caused by hands. The pathologist noted that his findings were consistent with "shaken impact syndrome" since there was evidence of an impact site and a cluster of injuries including shaking.
 {¶ 6} A grand jury indicted Appellant on charges of aggravated murder, involuntary manslaughter, felonious assault, and child endangering. A later grand jury indicted Appellant for murder predicated on the commission of the offenses of felonious assault and child endangering.
 {¶ 7} The State dismissed the involuntary manslaughter charge at trial. The jury acquitted Appellant of aggravated murder but found him guilty of the remaining charges. The court sentenced Appellant to a statutorily mandated term of fifteen years to life in prison on the murder charge and determined that the felonious assault and child endangering offenses merged with the murder charge for sentencing purposes.
 {¶ 8} Appellant timely appealed his conviction, citing the following assignments of error: "First Assignment of Error — The Appellant's conviction for murder was against the manifest weight of the evidence. Second Assignment of Error — The trial court abused its discretion by permitting the State to exhibit overly prejudicial, post-mortem photographs of a young child to be displayed to the jury. Third Assignment of Error — The Appellant's trial counsel did not provide Appellant with effective assistance of counsel by failing to request a jury instruction on the lesser charge of involuntary manslaughter."
 II. {¶ 9} In his first assignment of error, Appellant argues that his conviction for murder was against the manifest weight of the evidence.
 {¶ 10} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy,84 Ohio St.3d 180, 193, 1998-Ohio-533, 702 N.E.2d 866. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, quoting Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, 227 N.E.2d 212. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. However, we will not reverse a conviction if the State presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, syllabus, 383 N.E.2d 132.
 {¶ 11} At the time Journey sustained her injuries, her mother was at work. Journey and her older half-sister, who was asleep, were alone with Appellant. Appellant attempted to convince the jury that due to a broken chain, Journey had pushed open the trailer door, which allowed her to fall outside the trailer directly on the ground without striking the steps leading from the door. Appellant contended that Journey's head struck the ground, resulting in the traumatic injury which led to her death. Appellant attributed the bruising on Journey's chest to the CPR performed following the fall and the bruising on her back to the settling of blood following her death.
 {¶ 12} According to the State's theory of the case, Appellant grabbed Journey and either struck her in the head, possibly with his hand, or struck her head against an object and violently shook her. The bruising patterns on Journey's body demonstrated that she had been grabbed around the shoulders, with Appellant's thumbs on her back and his fingers on her chest. According to the State's witnesses, the bruising on Journey's chest was too high to have been caused by CPR. The coroner testified that, although the impact to her head caused Journey's death, she likely would have died within twenty-four hours from the shaking itself even if she hadn't received the blow to the head.
 {¶ 13} The State further attempted to discredit Appellant's version of events by introducing testimony that Journey was not yet walking. Thus, it would have been impossible for her to push open the door from a standing position because there was nothing near the door that she could use to help her stand upright. The State's witnesses also testified that the chain on the door was not broken at the time Journey supposedly fell and that Appellant tampered with the door following his daughter's death. The coroner testified that even if the chain on the door was broken, Journey could not have fallen out the door without striking the steps. The State also demonstrated that there was no evidence of grass stains, dirt, or moisture on Journey's clothing, which should have been present had she fallen onto the grassy ground as Appellant claimed. Further, the height from the doorway to the ground was slightly more than two and one-half feet and a fall from that distance onto the grassy surface would not have resulted in the deadly injuries that Journey suffered.
 {¶ 14} At trial, Appellant argued that he was not responsible for Journey's death since it was the result of an unfortunate accident. However, on appeal Appellant does not dispute that there was sufficient evidence to prove that he caused Journey's death. Rather, he argues that the trial record does not demonstrate that he intended to cause his daughter's death and, therefore, his murder conviction is unsupported by the evidence. We disagree.
 {¶ 15} Appellant was convicted of murder under R.C.2903.02(B), the felony murder statute, which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [the voluntary manslaughter statute] or section 2903.04 [the involuntary manslaughter statute]." The Ohio Supreme Court has held that the culpable mental state required to support a conviction under R.C.2903.02(B) is the same one necessary to support a conviction for the underlying felony offense of violence. State v. Miller,96 Ohio St.3d 384, paragraphs 31-34, 2002-Ohio-4931, 775 N.E.2d 498. In this case, the underlying felony offenses of violence were felonious assault and child endangering.
 {¶ 16} Felonious assault is defined by R.C. 2903.11(A)(1), which states that "no person shall knowingly * * * cause serious physical harm to another * * *." It is punishable as a first or second-degree felony under R.C. 2903.11(D), depending on the circumstances. R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." (Emphasis added.)
 {¶ 17} Child endangerment is defined by R.C. 2919.22(B)(1), which states that "no person shall do any of the following to any child under eighteen years of age * * * abuse the child." A violation of this section which results in serious harm to the child is a second degree felony. R.C. 2919.22(E)(2)(d). A conviction for child endangerment requires proof that the defendant recklessly committed the act of abuse. State v.McGee, 79 Ohio St.3d 193, 195, 1997-Ohio-156, 680 N.E.2d 975. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or be of a certain nature." R.C. 2901.22(C).
 {¶ 18} To find Appellant guilty of felony murder, the jury was required to find Appellant knowingly caused serious physical harm to Journey that proximately caused her death, or Appellant recklessly abused Journey and that the abuse proximately caused her death. The State presented ample evidence from which the jury could reasonably conclude that Appellant knowingly struck his daughter on the head and thus caused her death. The State also presented ample evidence from which the jury could reasonably conclude that Appellant recklessly abused his daughter by severely shaking her and thus caused her death. The jury concluded that Appellant had done both and these findings are supported by substantial evidence. The jury was not required to find that Appellant intended to cause Journey's death in order to find him guilty of murder under R.C. 2903.02(B). Therefore, even without an indication that Appellant intentionally caused Journey's death, the manifest weight of the evidence supports his murder conviction.
 {¶ 19} We overrule Appellant's first assignment of error.
 III. {¶ 20} In his second assignment of error, Appellant asserts that the trial court erred in permitting the State to display certain post-mortem photographs of Journey to the jury. Appellant contends that, even though these pictures were not admitted into evidence, the mere showing of the photographs to the jury was overly prejudicial and unnecessary. Appellant asserts that the testimony of the pathologist who performed the autopsy and the coroner was sufficiently clear and the use of the photographs was unnecessary, especially since they were not introduced as evidence.
 {¶ 21} Interestingly, Appellant does not specify which photographs he finds objectionable. A review of the record indicates that trial counsel objected only to State's Exhibit 8, which contained three autopsy photographs. Therefore, we assume that these are the pictures to which Appellant now refers. Moreover, the trial court admitted these photographs into evidence at the close of the State's case in spite of Appellant's contention to the contrary. While the trial court initially indicated its reluctance to allow State's Exhibit 8 into the jury room because of its graphic nature, there is nothing in the record demonstrating that this exhibit was treated differently than any other admitted evidence and that the jury did not have access to it during deliberations.
 {¶ 22} Nonetheless, it is well settled that the admission of photographs is left to the discretion of the trial court. Statev. Smith, 80 Ohio St.3d 89, 108, 1997-Ohio-355, 684 N.E.2d 668. In order to reject relevant evidence, the trial court must find that the danger of unfair prejudice to the defendant substantially outweighs its probative value. Evid.R. 403(A). The rule manifests a definite bias in favor of the admission of relevant evidence. The dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission. See Gianelli Snyder, Baldwin's Ohio Practice, Evidence (2d ed.), § 403.9.
 {¶ 23} The trial court's decision will not be reversed "`unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby * * *.'" State v. Slagle
(1992), 65 Ohio St.3d 597, 602, 605 N.E.2d 916, quoting State v.Hymore (1967), 9 Ohio St.2d 122, 128, 224 N.E.2d 126. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. Franklin Cty.Sheriff's Dept. v. State Emp. Relations Bd. (1992),63 Ohio St.3d 498, 506, 589 N.E.2d 24.
 {¶ 24} The photographs in State's Exhibit 8 are indisputably gruesome and the trial court recognized the disturbing nature of the pictures. The three photographs were taken during the autopsy of Journey's body. Two of the photographs depict Journey's open skull with the skin partially removed while the third photograph shows the inside of the skull. The pathologist used this exhibit during his testimony to show the jury the extent of the hemorrhaging caused by the blow to Journey's head.
 {¶ 25} When considering whether to allow the jury to observe State's Exhibit 8, the trial court noted that it did not imagine that the injuries previously described by the pathologist would appear as severe as they did in the photographs. For this reason, the court concluded that the exhibit was clearly relevant. The court then indicated that the question of prejudice was extremely close given the overly gruesome nature of the photographs, but concluded that State's Exhibit 8 was admissible.
 {¶ 26} Having reviewed the testimony and the exhibit, we find that the trial court's decision to admit State's Exhibit 8 was not unreasonable, unconscionable or arbitrary. The photographs demonstrate the severity of the victim's injuries and do so more clearly than the pathologist's testimony alone. The trial court warned the jury of the gruesome nature of the photographs and, both at the end of the direct examination of the pathologist and during the final jury instructions, instructed the jury not to be prejudiced against Appellant simply because of them. Appellant has failed to establish the potential unfair prejudice of the photos substantially outweighed their probative value.
 {¶ 27} We overrule Appellant's second assignment of error.
 IV. {¶ 28} In his third assignment of error, Appellant argues that his trial counsel was ineffective in that he failed to request a jury instruction on the lesser charge of involuntary manslaughter.
 {¶ 29} The Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. Furthermore, the United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct. 2052. In order to prove the ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance was in fact deficient, i.e., not reasonably competent, and (2) such deficiencies prejudiced the defense so as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687,80 L.Ed.2d at 693; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, 538 N.E.2d 373.
 {¶ 30} When considering whether counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983),461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96.
 {¶ 31} Appellant argues that, following the State's case-in-chief, his counsel should have known that he was responsible for Journey's death and requested an involuntary manslaughter instruction. Appellant now contends that neither the physical evidence nor the defense theory supported an accident defense. He argues there was sufficient evidence presented to entitle him to an involuntary manslaughter instruction.
 {¶ 32} Even assuming that involuntary manslaughter is a lesser included offense of felony murder and that the evidence supported such an instruction, trial counsel was not ineffective in failing to request the instruction. Despite his current contention otherwise, Appellant's theory at trial was that Journey's death was accidental and not caused by his actions. Therefore, Appellant is disingenuous when he complains that the defense theory did not support an accident defense. Appellant presented evidence that another child had fallen out the back door of his trailer prior to Journey's death without touching the stairs, as well as evidence that Journey was walking and capable of pushing open the back door of the trailer. While Appellant did not produce a medical expert to testify that Journey's injuries were consistent with his version of events, through cross-examination defense counsel demonstrated that there have been instances of children falling from relatively short distances and sustaining fatal injuries.
 {¶ 33} At trial, Appellant's counsel made the tactical decision to argue that Appellant had no culpability for Journey's death. To later argue that Appellant was culpable for Journey's death, but to a lesser extent, would have been wholly inconsistent with the defense theory. Defense counsel's failure to request the instruction on the lesser included offense and to proceed on an all or nothing basis (guilty or not guilty on the charged crimes) is not ineffective assistance of counsel. Thus, Appellant has failed to overcome the presumption that trial counsel employed sound trial strategy in not requesting a jury instruction on the crime of involuntary manslaughter. Appellant's third assignment of error has no merit.
 {¶ 34} Having found that none of Appellant's assigned errors are meritorious, we affirm the judgment of the trial court.
Judgment affirmed.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.