OPINION
{¶ 1} Defendant-appellant Timothy Lamarr Davis appeals from his conviction in the Stark County Common Pleas Court of murder with a firearm specification, a violation of R.C. 2903.02(A)(2) and (B). In support thereof, appellant sets forth a multitude of issues before this court: (1) whether the trial court erred when it did not give a defense of others instruction; (2) whether the trial court committed error in denying the admission of the victim's reputation evidence and the victim's specific acts of conduct, including possession of cocaine at the time of the incident; (3) did the trial court err when it did not allow the coroner to testify as to whether alcohol would cause an aggressive person to be more aggressive; (4) whether the trial court should have excluded three photographs from evidence due to their repetitive and prejudicial nature; (5) whether appellant received ineffective assistance of counsel; (6) whether the verdict is against the manifest weight of the evidence and is supported by insufficient evidence; and (7) whether the cumulative effect of the alleged errors denied appellant a fair trial. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On the evening of August 4, 2003, appellant, Trevis Davis (appellant's brother), Eloy Lopes, and Dana Austin (decedent) attended a party. (Tr. 408). At this party each of the above individuals were consuming alcohol. (Tr. 408-409).
 {¶ 3} It is disputed as to whether appellant and Austin had an argument at this party. (Tr. 409, 441, 525-526). Appellant and Trevis testified that an exchange occurred between Austin and appellant over appellant's father's outstanding crack cocaine bill. (Tr. 441, 465, 472, 525-526). Lopes, on the other hand, testified that at the party there were no problems between Austin and appellant. (Tr. 409).
 {¶ 4} After a couple of hours, a number of people including the above four named individuals decided to go to Stella's Bar in Canton, Ohio. (Tr. 410). Lopes and Austin arrived at Stella's first and both had a few drinks there. (Tr. 412). Austin then left the bar, while Lopes remained inside. (Tr. 413). Upon exiting the bar, Austin encountered appellant. (Tr. 531) Shortly thereafter, Trevis, driving separately from appellant, arrived at Stella's Bar. Trevis parked his minivan behind appellant's vehicle and remained in the minivan.
 {¶ 5} Austin approached appellant's vehicle where appellant was sitting. Appellant grabbed a gun he kept under the car seat, put it in his pocket and exited the vehicle. At this point, an argument occurred between the two men, allegedly over appellant's father's outstanding crack cocaine bill. (Tr. 443). Appellant testified that during the argument Austin said to him, "All right, mother fucker, stay right here, I'm going to kill your ass, stay right here." (Tr. 535). Trevis testified that Austin told appellant to wait right there. (Tr. 445). After these alleged threats were made Austin turned and started walking towards his car. Austin took about four steps, began to turn around, and allegedly looked as if he was reaching for a gun at his waist. (Tr. 536-537). Appellant then turned and ran towards his car and shot in Austin's direction. (Tr. 537).
 {¶ 6} After firing the gun, appellant ran down a nearby alley and threw the gun in a sewer. (Tr. 539). Appellant then used his cell phone to call Canton Police Officer Baskerville and informed him that he had just shot at Austin. (Tr. 540).
 {¶ 7} Shortly thereafter officers arrived on the scene and found Austin dead. Austin had sustained two gunshot wounds, one to the right forehead and one to the left arm/chest. (Tr. 356, 358-360). The autopsy revealed that the gunshot wound that entered through the left arm and exited through the left chest was fatal. (Tr. 358-360, 364). The gunshot wound to the head was non-fatal; it entered, hit the forehead bone and then exited, causing only a flesh wound. (Tr. 356-357).
 {¶ 8} The police then began searching for appellant. Appellant turned himself in later the next day.
 {¶ 9} Appellant was indicted on one count of murder with a firearm specification. He entered a plea of not guilty and the case proceeded to a jury trial; the jury found him guilty. The court sentenced him to a prison term of 15 years on the murder charge and three years on the firearm specification. The trial court ordered the sentences to be served consecutively. Appellant timely appeals from the conviction raising seven assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 10} "The trial court erred when it refused to submit the appellant's proposed jury instructions for the defense of others thereby denying appellant's right to due process and a fair trial guaranteed by the united states and ohio constitutions."
 {¶ 11} During trial, appellant requested both a self-defense jury instruction and a defense of others jury instruction. The trial court granted the self-defense instruction, but refused to give the defense of others instruction. The trial court reasoned that a defense of others jury instruction would not be appropriate in this case because the testimony established that the threat was made to appellant and was not made to his brother. (Tr. 582).
 {¶ 12} Appellant finds fault with this determination. He contends that his own testimony established that he was fearful for his brother's, Trevis, life. Thus, he contends that this evidence is sufficient to sustain a defense of others jury instruction, and, as such, the trial court abused its discretion in refusing to give the requested instruction.
 {¶ 13} When reviewing a court's refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. Statev. Wolons (1989), 44 Ohio St.3d 64.
 {¶ 14} A defendant is entitled to a jury instruction on the defense of others if he introduces sufficient evidence that, if believed, raises a question in the minds of reasonable persons pertaining to such issue. See State v. Melchior (1978),56 Ohio St.2d 15. The elements of the defense of others are as follows: (1) that he, in good faith and upon reasonable grounds, believed that a family member was in imminent danger of bodily harm, (2) that he used a reasonable degree of force to defend the family member, and (3) that he used the same force that he would be entitled to use in self-defense. State v. Sochor (July 26, 1999), 5th Dist. No. 1998CA00139, citing State v. Williford
(1990), 49 Ohio St.3d 247, 250. A defendant need only provide evidence of a nature and quality sufficient to raise the defenses rather than prove the applicability of it by a preponderance of the evidence. State v. Robinson (1976), 47 Ohio St.2d 103.
 {¶ 15} The first prong of defense of others was not sufficiently established as to entitle appellant to a defense of others instruction. Testimony clearly established that any allegedly threatening remarks made by Austin were directed toward appellant. (Tr. 445, 535). Appellant specifically testified that Austin threatened to kill him. (Tr. 535). There was no testimony that Austin threatened to kill his brother. The majority of appellant's testimony is that he thought Austin was going to kill him. (Tr. 538-539, 543).
 {¶ 16} Appellant also testified that Trevis was in Austin's potential line of fire, since Trevis' minivan was parked behind appellant's car. (Tr. 544). Appellant further stated that he feared for his brother's safety. (Tr. 544). However, this testimony does not provide a sufficient basis to show that he had a reasonable belief that Trevis was in imminent danger of bodily harm. An entire reading of appellant's testimony overwhelmingly establishes that no threat was made to Trevis; neither Trevis nor appellant testified that Austin threatened Trevis. When the evidence is devoid of any indication that the family member was threatened, a defense of others instruction is not warranted. SeeWilliford, 43 Ohio St.3d at 250 (stating that a defense of others instruction should have been given because actual testimony established that the family member the accused claimed to be protecting had actually been threatened with physical harm). As there is no evidence that Trevis was threatened, the defense of others instruction was not warranted. The trial court did not abuse its discretion. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 17} "The trial erred in prohibiting the appellant from introducing evidence regarding the victim's reputation for carrying a gun and possession of cocaine thereby impermissible limiting appellant's ability to establish his defense of self-defense."
 {¶ 18} Appellant argues that the trial court prevented him from introducing reputation and specific instances of conduct evidence at trial. Also under this assignment of error he argues that the trial court erred by denying him the opportunity to present evidence that at the time of his death, Austin had crack cocaine on his person. He contends that these errors prevented him from establishing his affirmative defense of self-defense.
 {¶ 19} In meeting the burden to prove self-defense, the defendant must establish in part a bona fide belief that he was in imminent danger of death or great bodily injury. State v.Robbins (1979), 58 Ohio St.2d 74, 80. In order to prove the defendant's state of mind, a court can allow the defendant to testify about the victim's reputation for violence and his knowledge of specific instances of the victim's prior violent conduct. See, e.g. State v. Baker (1993), 88 Ohio App.3d 204,208.
 {¶ 20} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Statev. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 21} Prior to trial, the state made an oral motion in limine requesting that the court prevent defendant from introducing evidence regarding Austin's reputation as a violent person and that cocaine and marijuana were found on Austin after the shooting. (Tr. 12-15, 28-33). As to the introduction of reputation and specific instances of Austin's conduct, the trial court reserved ruling until such evidence was introduced at trial. (Tr. 15). However, as to the introduction of the cocaine and marijuana found on Austin's person, the trial court sustained the state's motion. (Tr. 33). In coming to this determination the court stated, "If you feel that something else has developed through the course of the trial, Mr. Koukoutas [defense attorney], if you wish to bring it back up and ask the Court to reconsider the State's motion and the ruling, I certainly shall." (Tr. 33).
 {¶ 22} Addressing appellant's argument as to reputation testimony, we note that during the trial defense counsel questioned multiple witnesses about Austin's reputation in the community. Officer Anthony Jackson testified that Austin was abrasive, intimidating and a bully. (Tr. 235). Sergeant John Dittmore when asked by defense counsel as to whether he had any knowledge of whether Austin was an aggressive person responded that he did not know Austin personally. (Tr. 263). Officer Gibran Baskerville was asked by defense counsel whether Austin was an aggressive person or a bully. (Tr. 292). He responded that Austin was not and then stated that, "he never had a problem with him being a bully with me." (Tr. 293). Lopes testified that Austin had a reputation for being aggressive and a bully. (Tr. 433). He was also asked whether he had ever seen Austin with a gun in which he responded that he had not. (Tr. 435 — question asked by the state). Trevis testified that Austin had a reputation as being a bully. (Tr. 474). He was also asked whether he had ever seen Austin with a gun, he also responded that he had not. (Tr. 453). Appellant additionally testified that Austin had a reputation of being a bully. (Tr. 530).
 {¶ 23} The above testimony shows that Austin's reputation was admitted in trial. Furthermore, testimony was allowed as to whether witnesses had knowledge of whether Austin was known to carry a firearm. Thus, appellant's argument that he was prevented from offering testimony of Austin's reputation is misplaced.
 {¶ 24} However, in one instance the trial court did not permit appellant to introduce specific instances of conduct.[1] Appellant asked Trevis whether he had ever seen Austin be violent with anybody. (Tr. 474). The state objected; the trial court sustained the objection, and appellant withdrew the question. (Tr. 474). Appellant did not proffer testimony as to what Trevis would testify to if he answered this question. Thus, it is unclear as to what Trevis' testimony would have established.
 {¶ 25} Regardless, the trial court did not err when it did not permit Trevis to testify as to Austin's specific instances of conduct. As explained above, the defendant may offer his own testimony regarding specific instances of the victim's prior violent conduct in order to establish his state of mind. Statev. Cuttiford (1994), 93 Ohio App.3d 546, 554. However, other witnesses are not permitted to testify to the victim's specific instances of violent conduct to establish the defendant's state of mind, i.e. his bona fide belief that he was in imminent danger. State v. Mason, 6th Dist. Nos. L-02-1211, L-02-1189,2003-Ohio-5974, at ¶ 39, citing Evid.R. 405. Thus, this argument lacks merit.
 {¶ 26} As to the exclusion of testimony as to the crack cocaine on Austin's person at his time of death, the trial court did not err in making this ruling. The grant or denial of a motion in limine does not preserve any error for review. Statev. Hill (1996), 75 Ohio St.3d 195, 202-203. In order to preserve the error, the evidence must be presented at trial, and a proper objection lodged. State v. Brown (1988), 38 Ohio St.3d 305, at paragraph three of the syllabus; State v. Grubb (1986),28 Ohio St.3d 199, at paragraph two of the syllabus. An appellate court will then review the correctness of the trial court's ruling on the objection rather than the in limine ruling. See Wray v.Herrell (Feb. 24, 1994), 4th Dist. No. 93CA08; State v.Hapney, 4th Dist. Nos. 01CA30, 01CA31, 2002-Ohio-3250, at ¶ 55.
 {¶ 27} During trial, appellant did not try to introduce the evidence of the crack cocaine. Thus, this issue was not preserved for appeal.
 {¶ 28} However, even if it was, the argument would still fail. Evidence of drug activity on the part of the victim is admissible only insofar as it is relevant to the claim of self-defense. State v. Silva (Feb. 11, 1991), 5th Dist. No. CA-8047, citing State v. Randle (1980), 69 Ohio App.2d 71. Appellant's claim of self-defense appeared to be based on Austin's violent nature and fear for his life, not over the fact that Austin was allegedly a drug dealer. Therefore, the crack cocaine does not appear to be relevant. It would have been relevant if this was a shooting over a drug deal gone wrong.
 {¶ 29} Notwithstanding, even if it were relevant, sufficient other evidence was introduced which if believed could lead the jury to believe that Austin was a drug dealer. Testimony from numerous witnesses established that the alleged altercation between Austin and appellant was over a $2,500 drug debt appellant's father owed to Austin. Thus, admission of evidence that Austin had crack cocaine on him at the time of his death would not have added additional information for the jury to consider when determining self-defense. Considering all other evidence, the failure to admit this evidence would have been harmless at most. State v. Moreland (1990), 50 Ohio St.3d 58,65 (stating error in the admission of evidence constitutes harmless error where the remaining evidence, standing alone, is overwhelming proof of defendant's guilt). This argument lacks merit. For all the above stated reasons, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 30} "The trial court erred in excluding evidence concerning the effects of decedent's excessive alcohol consumption."
 {¶ 31} Under this assignment of error, appellant argues that the trial court erred when it did not allow the coroner, Dr. Murthy, to testify as to whether excessive alcohol consumption would exacerbate aggressiveness in a person with an aggressive personality. The state counters this argument by claiming that Dr. Murthy was not capable of answering the question.
 {¶ 32} The colloquy between defense counsel and Dr. Murthy at issue is as follows:
 {¶ 33} "Q. All right. In this case, sir, you indicated that there was a blood alcohol level of .15?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. Given what you indicated — what you testified to regarding Dana's height, weight, lack of body fat, taking all that into account, what does the .15 blood alcohol mean?
 {¶ 36} "A. Well, a person with .15 blood alcohol, the effect of that on an individual has a tremendous variation. Some people become sleepy, some people become talkative, and some people lose their — lose their inhibition. So different people have different aspects of their effect on the human body by alcohol, but — again, so it's many variable factors. And that's all I can say.
 {¶ 37} "* * *
 {¶ 38} "Q. Okay. And Doctor, you also mentioned about how alcohol affects people differently, makes some people sleepy, makes other people lose their inhibitions. Alcohol can also make a person be aggressive, right?
 {¶ 39} "A. Yes. Depends upon the person's personality and how they react. A lot of variable factors are there.
 {¶ 40} "Q. Okay. Is it fair to say that if a person has an aggressive personality to begin with that alcohol may exacerbate that aggressiveness?" (Tr. 379-381).
 {¶ 41} At this point the state objected and the court sustained the objection.
 {¶ 42} Given the above colloquy, the trial court did not abuse its discretion in sustaining the objection. Dr. Murthy specifically testified that a .15 blood alcohol level has different effects on individuals. (Tr. 380). According to Dr. Murthy, there are a lot of variable factors that affect how the alcohol will react with the individual. (Tr. 381). Thus, by his own admission, he was not capable of answering the question. Given all the above, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 43} "The trial court abused its discretion by admitting into evidence crime scene photographs which were repetitive, cumulative, inflammatory and unduly prejudicial."
 {¶ 44} Under this assignment of error appellant contends that three of the photographs should have been excluded from evidence because they were repetitive and the probative value was substantially outweighed by the danger of unfair prejudice. The state contends that each of these three pictures depicts different wounds and rebuts appellant's contention that he was blindly shooting in Austin's direction.
 {¶ 45} "Decisions on the admissibility of photographs are `left to the sound discretion of the trial court.'" State v.Coley, 93 Ohio St.3d 253, 265, 2001-Ohio-1340, quoting State v.Slagle (1992), 65 Ohio St.3d 597. In a non-capital case, the admission of potentially prejudicial photographs is determined under a balancing test; the probative value of the photographs must be outweighed by the danger of unfair prejudice to warrant exclusion. State v. Franklin (1991), 62 Ohio St.3d 118, 125; Evid.R. 403. Photographs may be used to corroborate the testimony of witnesses, to help establish the intent of the accused, or to show the nature and circumstances of the crime. See State v.Jalowiec, 91 Ohio St.3d 220, 230, 2001-Ohio-26.
 {¶ 46} The first picture, exhibit 11, is a picture of Austin lying next to his car. It is not a close-up picture and none of the gunshot wounds are clearly visible in this picture. However, it is the only picture that is a full body shot of Austin and shows his position when he died. This photograph corroborates testimony by some of the witnesses and, as such, it shows the nature and circumstances of the crime. Id. This photograph is not repetitive and its probative value is not outweighed by its prejudicial effect. Consequently, the trial court did not abuse its discretion in allowing the admission of this photograph.
 {¶ 47} The other two pictures, exhibits 12 and 13, are close-up pictures of Austin's face that show the gunshot wound to Austin's head. These are the only two pictures that show the gunshot wound to Austin's head. Consequently, not only do they corroborate the coroner's testimony as to the gunshot wound to the head, but they also show the nature and circumstances of the crime. Id. The probative value outweighed any prejudicial effect.
 {¶ 48} That said, while these two pictures are taken at slightly different angles, it could be determined that they are repetitive as to the showing of the gunshot wound to the head. They both clearly show the exit and entrance wound to the right forehead. The only difference between the two pictures is that exhibit 13 is a slightly closer view, a front view of Austin's face, and was taken after some of the blood was cleaned from Austin's face. Exhibit 12, on the other hand, is not as close, is a profile picture of the right side of Austin's face and was taken at the scene. Therefore, the admission of one of these pictures, instead of both, would have been sufficient to show the jury the nature and circumstance of the crime.
 {¶ 49} Yet, even if the pictures are repetitive and it was error to admit them both, it is not such an error as to mandate a reversal of the conviction. State v. Moore, 81 Ohio St.3d 22,32-33, 1998-Ohio-441. The Supreme Court has stated that admission of photographs showing wounds from varying distances is regarded as nonreversible error. State v. Thompson (1987),33 Ohio St.3d 1, 9. There is no doubt that any such error here is harmless because of the abundant evidence against appellant. See Id. and analysis under the sixth assignment of error. Thus, given all the above reasons, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 50} "Appellant was denied a fair trial in violation of the united states and ohio constitutions due to the ineffective representation of trial counsel."
 {¶ 51} Appellant argues that trial counsel was ineffective for failing to request an instruction on the lesser-included offenses of voluntary and involuntary manslaughter. The state counters this argument by contending that such requests are within the parameters of trial strategy.
 {¶ 52} The standard of review of an ineffective assistance of counsel claim is well established. Pursuant to Strickland v.Washington (1984), 466 U.S. 668, 687, in order to prevail on such a claim, appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial would have been different. State v. Bradley
(1989), 42 Ohio St.3d 136.
 {¶ 53} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 54} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 136. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 55} Appellant fails to meet the first prong of ineffective assistance of counsel; i.e. that his counsel's performance fell below an objective standard of reasonableness. The failure to request a jury instruction on a lesser-included offense is presumed to be a matter of trial strategy, and, therefore, does not per se establish ineffective assistance of counsel. State v.Griffie, 74 Ohio St.3d 332, 333, 1996-Ohio-71; State v.Clayton (1980), 62 Ohio St.2d 45; State v. Boone, 5th Dist. No. 2001CA00167, 2001-Ohio-7044. This is particularly true when the defendant presented a self-defense claim and does not want to confuse the jury or reduce the possibility of obtaining an acquittal. See State v. Harris (1998), 129 Ohio App.3d 527,533; State v. Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136 (pursuing a defense of self-defense is an attempt to gain a complete acquittal). Thus, appellant has failed to overcome the presumption that trial counsel employed sound trial strategy in not requesting a jury instruction on the crime of voluntary or involuntary manslaughter. See State v. Irwin, 4th Dist. Nos. 03CA13, 03CA14, 2004-Ohio-1129. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 56} "The verdict is against the manifest weight and sufficiency of the evidence and contrary to law."
 {¶ 57} Appellant argues that he proved by a preponderance of the evidence that he acted in self-defense at the time of the shooting. Thus, he contends that the state did not prove by proof beyond a reasonable doubt that appellant acted purposefully in causing Austin's death. Accordingly, he insists that the verdict neither is supported by sufficient evidence nor is supported by the weight of the evidence.
 SUFFICIENCY OF THE EVIDENCE {¶ 58} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 59} Appellant was charged with one count of murder pursuant to R.C. 2903.02(A) and/or (B) with a firearm specification pursuant to R.C. 2941.145. R.C. 2903.02 states:
 {¶ 60} "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.
 {¶ 61} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or2903.04 of the Revised Code."
 {¶ 62} The indictment stated that the underlying offense for R.C. 2903.02(B) was felonious assault. Felonious assault is defined as:
 {¶ 63} "(A) No person shall knowingly do either of the following: {¶ 64} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2).
 {¶ 65} Appellant asserted the affirmative defense of self-defense, which is an assertion that his actions were justified. In order to establish the affirmative defense of self-defense, an appellant generally has to show three elements: (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat. State v. Perry, 5th Dist. No. 02CA77, 2003-Ohio-6097, at ¶ 25, citing Robbins,58 Ohio St.2d 74.
 {¶ 66} Viewing the evidence in the light most favorable to the state, appellant's sufficiency of the evidence argument fails. The state presented evidence that appellant shot Austin and that one of the gunshot wounds was fatal. (Tr. 364, 537). The criminalist testified that all of the shots fired that night in that street came from the same gun. (Tr. 496). Furthermore, the state provided evidence that at the time of the incident, Austin did not have a gun on his person and that no one had seen him with a gun. (Tr. 242, 320, 321, 435, 453). The state also presented evidence, which if believed, could establish that prior to the incident there was no altercation between appellant and Austin. (Tr. 409). Thus, the effect of all of this evidence was that appellant killed Austin and, at the time, he did not have a bona fide belief that he was in imminent danger of death or great bodily harm. Accordingly, the state presented sufficient evidence to prove that appellant committed the crime he was charged with. This argument lacks merit.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 67} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 68} The testimony and evidence at trial could be viewed in two different ways. In the best possible light to appellant, it could be seen as establishing that he acted in self-defense. Trevis testified that there was an altercation, i.e. argument between Austin and appellant at the party. This altercation arose from a $2,500 crack cocaine debt that appellant's father owed to Austin. Appellant testified that this altercation escalated in front of Stella's bar where Austin told appellant he was going to kill him. According to appellant, Austin turned his back and began walking toward his car, then Austin began to turn around and looked as if he was going to pull a gun and shoot appellant. Appellant stated that he saw a gun. That's when, according to appellant, he began running towards his car and at the same time began shooting at Austin. Appellant claimed to be in fear for his life and that was why he was shooting. Testimony from other individuals established that Austin had a reputation for being a bully and for having an aggressive personality. If the jury believed this testimony, it could support a finding for self-defense.
 {¶ 69} However, testimony offered by other individuals, if believed by the jury could establish that appellant did not have a bona fide belief that he was in danger of his life. Lopes testified that there was no altercation at the party between Austin and appellant. Moreover, even if the jury believed that an altercation had occurred between Austin and appellant over the $2,500 appellant's father owed to Austin, appellant agreed to go to Stella's where he knew Austin was also going. Testimony established that appellant and Austin had known each other for years and that Austin had a reputation for being a bully and aggressive. Despite this knowledge, appellant still went to Stella's Bar. This could have indicated to the jury that appellant did not fear imminent harm from Austin.
 {¶ 70} Furthermore, testimony established that Austin did not have a gun on him and neither Trevis nor Lopes had ever seen Austin with a gun. Additionally, a picture of shell casings could shed doubt on appellant's claim that he was running away from Austin while he was shooting. The picture of shell casings show that five of the shell casings dropped in close proximity to each other, indicating that appellant was in the same area when he shot those five shots. Thus, this testimony could establish that at the time of the shooting appellant did not have a bona fide belief that he was in danger.
 {¶ 71} The jury was in the best position to weigh the credibility of the witnesses. The jury was instructed on self-defense and still returned a guilty verdict. Thus, the jury did not believe that appellant had a bona fide belief that he was in imminent danger. Considering all of the above, we cannot find that the verdict was against the manifest weight of the evidence. This argument lacks merit. For all the above reasons, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER SEVEN {¶ 72} "The cumulative effect of errors during the trial resulted in appellant being denied a fair trial."
 {¶ 73} Appellant's argument under this assignment of error is based upon State v. DeMarco (1987), 31 Ohio St.3d 191. InDeMarco, the Supreme Court stated errors in the trial taken singularly may not rise to the level of prejudicial error, but when the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial the conviction will be reversed. Id. at paragraph two of the syllabus. However, the doctrine is not applicable when there are not multiple instances of harmless error. State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168.
 {¶ 74} As explained under the first six assignments of error, there were not multiple instances of harmless error (at most there was one instance of harmless error). Thus, the cumulative error doctrine is not applicable. This argument lacks merit.
 {¶ 75} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs.
[1] Out of all of the witnesses, appellant only tried to ask for specific instances of conduct twice; once to Officer Baskerville and once to Trevis. Officer Baskerville was asked if he had ever known Austin to be aggressive or a bully with other people. (Tr. 293). Over the state's objection, the trial court permitted Officer Baskerville to answer the question. He stated that he had never known him to be bullying or aggressive with other people. (Tr. 293).