{¶ 117} I respectfully dissent. Although I agree with the majority that Mr. Kidd's fourth assignment of error is without merit, I disagree with the majority with respect to the first, second, and third assignments of error.
 {¶ 118} In his first assignment of error, Mr. Kidd argues that the trial court's determination that he was not indigent denied him of a fair trial because he was deprived of adequate pretrial investigative services and an opportunity to seek funds for expert witnesses. I agree.
 {¶ 119} Section 5(A), Article IV, of the Ohio Constitution, authorizes the Supreme Court of Ohio to establish Rules of Superintendence. "`(* * *) These Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts. * * *." State v. Tyler (1990), 67 Ohio App.3d 455, 456, quoting State v. Singer (1977), 50 Ohio St.2d 103, 109-110.
 {¶ 120} "The superintendence rules are an administrative directive from the Supreme Court to the Trial Court to more clearly define judicial duties and responsibilities and to provide for more uniform and effective methods of court administration. The superintendence rules are housekeeping rules which create no substantive rights in defendants."State v. Frazier (Aug. 29, 1977), 11th Dist. No. 6-122, 1977 Ohio App. LEXIS 8558, at 2. (Citations omitted.)
 {¶ 121} Ohio Superintendence R. 22 provides:
 {¶ 122} "[w]here required by law to appoint counsel to represent indigent defendants in cases for which the county will apply to the Ohio Public Defender *Page 26 
Commission for reimbursement of costs, the court shall require the applicant to complete the financial disclosure form. The court shall follow rules promulgated by the Commission pursuant to division (B)(1) of section 120.03 of the Revised Code as guidelines to determine indigency and standards of indigency."
 {¶ 123} Ohio Administrative Code, Section 120-1-03, states in part:
 {¶ 124} "Ohio Public Defender Commission's rules are promulgated pursuant to divisions (B)(1), (B)(6), (B)(7), and (B)(8) of section120.03 of the Revised Code. Further considerations include State vs.Tymcio (1975), 42 Ohio St.2d. 39 and the Ohio supreme court rules of superintendence.
 {¶ 125} "(A) General statement of policy. When required by rule or law to appoint counsel for indigent persons, the criteria for determining indigency shall include: ownership and ready availability of real or personal property; all household income, inheritance, expectancies, and other assets; number and age of dependents; outstanding debts, obligations and liabilities; and any other relevant considerations. The pivotal issue in determining indigency is not whether the applicant ought to be able to employ counsel but whether the applicant is, in fact, able to do so. Possible sources of income, assets, and liabilities are listed on the financial disclosure form * * *."
 {¶ 126} "The right to the assistance of court-appointed counsel in a criminal case turns upon the inability to obtain counsel. The entitlement depends, not upon whether the accused ought to be able to employ counsel, but whether he is in fact `unable to employ counsel.'"Tymcio, supra, paragraph one of the syllabus.
 {¶ 127} In the instant matter, Mr. Kidd's mother had retained counsel for trial. However, the concern focuses on Mr. Kidd's inability to employ counsel. A criminal defendant's family member has no legal duty to provide the accused with the monetary *Page 27 
means to defend himself. See State ex rel. Seigler v. Rone (1975),42 Ohio St.2d 361, 362.
 {¶ 128} In addition, Mr. Kidd filed an affidavit of indigency on March 1, 2006, and hearings commenced shortly thereafter. Prior to the events arising out of this case, Mr. Kidd was engaged in business as a self-employed mortgage signer. On January 23, 2006, Mr. Kidd was arrested and held in jail until February 2, 2006. During his incarceration, Mr. Kidd was unable to be on call to do mortgage signings. After his release from jail, he did not receive any calls to do mortgage signings. Although Mr. Kidd estimated his income when he was working at $400 per month on his affidavit of indigency form, and listed a $60 car as his only asset, he had no income whatsoever after January 23, 2006. Also, Mr. Kidd had no opportunity to find other employment because he was placed on house arrest pending trial.
 {¶ 129} Thus, I believe Mr. Kidd's first assignment of error is with merit.
 {¶ 130} In his second assignment of error, Mr. Kidd alleges that the trial court erred in failing to give his requested jury instructions on his burden of proof with respect to self-defense and his instruction on character evidence. I agree.
 {¶ 131} An appellate court reviews alleged error in a trial court's jury instructions for abuse of discretion. Frost v. Snitzer, 11th Dist. No. 2005-T-0090, 2006-Ohio-3882, at ¶ 95. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Adams at 157. The term is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. State v.Ferranto (1925), 112 Ohio St. 667, 676-678. The challenged instruction must be viewed in the context of the entire jury charge. *Page 28 Frost at ¶ 94. If the jury was misled in a manner materially affecting the complaining party's substantial rights, error may be found. Id.
 {¶ 132} With respect to self-defense, it is an affirmative defense, which, under R.C. 2901.05, the defendant has the burden of proving by a preponderance of the evidence. See State v. Davis (1982),8 Ohio App.3d 205, 208-209, fn. 3.
 {¶ 133} In the case at bar, the trial court prepared its own self-defense instruction. Mr. Kidd's counsel requested that the trial court supplement its instructions with an instruction on the defense's burden of proof with respect to self-defense by a preponderance of the evidence, pointing to the instructions as written in the Ohio Jury Instructions. However, the trial court refused to consider the request. The trial court's jury instructions with respect to self-defense focused on "beyond a reasonable doubt." Taken as a whole, the jury instructions could have misled the jury into believing that the defense had to prove self-defense beyond a reasonable doubt, rather than by a preponderance of the evidence. Clearly, the trial court's instruction imposed upon Mr. Kidd a greater burden of proof than the law requires.
 {¶ 134} In addition, I believe the trial court erred in failing to give Mr. Kidd's requested jury instructions on character evidence. Mr. Kidd's counsel prepared and submitted written jury instructions to the trial court on character evidence, taken directly from the Ohio Jury Instructions. However, the trial court denied the instruction because it would have been more prejudicial against the state. Here, the jury was unable to legally evaluate the evidence brought in by Mr. Kidd's character witnesses without an instruction on the law by the trial court.
 {¶ 135} Accordingly, I believe Mr. Kidd's second assignment of error is with merit. *Page 29 
 {¶ 136} In his third assignment of error, Mr. Kidd contends that the trial court erred in excluding evidence concerning the effects of the victim's excessive alcohol and opiates consumption on the night of the incident. I agree.
 {¶ 137} Evid.R. 402 provides:
 {¶ 138} "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."
 {¶ 139} Evid.R. 702 states in part:
 {¶ 140} "A witness may testify as an expert if all of the following apply:
 {¶ 141} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 142} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 143} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 144} In the instant case, the prosecutor alleged that Mr. Kidd stabbed the victim thirteen times, and introduced the victim's medical reports, which indicated that the victim was highly intoxicated and under the influence of opiates. During cross-examination of the victim's doctor, Mr. Kidd's counsel attempted to elicit evidence concerning the effects of the victim's excessive alcohol and opiates consumption on the *Page 30 
night of the incident. The prosecutor objected. The trial court held that such evidence was irrelevant and that only a toxicologist could give such testimony. I disagree.
 {¶ 145} "Evidence of drug activity on the part of the victim is admissible only insofar as it is relevant to the claim of self-defense."Davis, 2004-Ohio-7056, at ¶ 28. See, also, State v. Randle (1980), 69 Ohio App.2d 71, 74. The prosecutor alleged that the victim was stabbed thirteen times. Thus, evidence of drug activity on the part of the victim was relevant due to the fact that the victim's consumption could have produced a situation where the victim felt no pain and could have continued fighting even after being stabbed multiple times.
 {¶ 146} Also, this writer disagrees with the contention that a medical doctor is less qualified than a toxicologist with respect to testifying as an expert regarding general effects of excessive alcohol and opiates consumption.
 {¶ 147} Thus, I believe Mr. Kidd's third assignment of error is with merit.
 {¶ 148} For the foregoing reasons, I respectfully dissent. *Page 1