OPINION
{¶ 1} The appellant, Anthony Saxton, appeals the June 25, 2003 judgment of the Common Pleas Court of Marion County, Ohio, granting summary judgment in favor of the appellee, the State of Ohio, and dismissing Saxton's petition for post-conviction relief without an evidentiary hearing.[1]
 {¶ 2} The facts relevant to this appeal are as follows. On Wednesday, July 7, 1999, the Marion, Ohio Fire Department was dispatched to Taranda Braddy's house in response to a fire. Once a majority of the fire was extinguished, Taranda's body was found lying on the bed in her upstairs bedroom. The coroner determined that she died of strangulation before the fire was set. Investigators determined that the fire was intentionally set using gasoline as an accelerant.
 {¶ 3} Saxton, who was married to Taranda's mother, arrived at the scene later that morning and was approached by investigating officers. Thereafter, he consented to a search of his home, located approximately one mile from the scene of the crime. During the search, officers found potential evidence linking Saxton to the crimes. Included in this evidence were numerous items of apparel belonging to Saxton, which were found soaking in water and Purex deterergent in a bathtub. Among these items were denim shorts and a pair of shoes. Results of scientific testing on the items in the tub revealed that traces of gasoline were present on either the denim shorts or the shoes. However, which specific item contained the gasoline could not be determined because those articles were packaged together and were possibly cross-contaminated. Saxton was later arrested for an unrelated parole violation, and the investigation surrounding Taranda Braddy's death continued.
 {¶ 4} During the investigation, Saxton never accounted for his whereabouts between the times the crimes were committed and gave conflicting statements to the police. In addition, other circumstantial evidence implicating Saxton in the murder was discovered. As a result of the investigation, Saxton was indicted on one count of aggravated murder, one count of aggravated burglary, and one count of aggravated arson. During his trial, the presence of gasoline on Saxton's shorts and shoes was used to link him to the crime scene. Saxton's attorneys, in turn, raised the possibility that the police had contaminated the articles of clothing found to have traces of gasoline and that the gasoline got on these items due to their mishandling by law enforcement.
 {¶ 5} On March 8, 2000, after a two-week jury trial, Saxton was convicted on all counts. Subsequently, Saxton filed a motion for acquittal and a motion for a new trial, which were both denied after a hearing on the motions. Saxton was later sentenced to life imprisonment for aggravated murder, ten years imprisonment for aggravated burglary, and eight years imprisonment for aggravated arson; all terms to be served consecutively. Saxton appealed his convictions to this Court but to no avail as his convictions and sentences thereon were affirmed on March 7, 2002. See State v. Saxton, 3rd Dist. No. 9-2000-88, 2002-Ohio-1024, 2002 WL 359469.
 {¶ 6} On August 20, 2001, Saxton filed a petition for post-conviction relief, alleging ineffective assistance of counsel. The State filed a motion to dismiss the petition without a hearing. The trial court overruled this motion and ordered an evidentiary hearing. Due to various scheduling conflicts, the hearing date was changed several times and was finally set for July 1, 2003. Prior to the hearing, the State filed a "Motion for Summary Judgment and/or to Dismiss Petition for Postconviction Relief." On June 25, 2003, the trial court granted the State's motion and ordered the petition for post-conviction relief dismissed without an evidentiary hearing. This appeal followed, and Saxton now asserts one assignment of error.
After originally ordering that a hearing be held on Mr. Saxton'spost-conviction petition, the trial court erred in violation of R.C. 2953.21by dismissing the action and depriving Mr. Saxton of his right to dueprocess of law and the effective assistance of trial counsel as guaranteedby the Fifth, Sixth, and Fourteenth Amendments to the United StatesConstitution.
 {¶ 7} Our review of this issue begins by noting that this Court has previously determined that "[p]ostconviction petitions are special civil actions governed exclusively by statute." State v. Spirko (1998),127 Ohio App.3d 421, 429, citing R.C. 2953.21; R.C. 2953.23. "Therefore, a petitioner receives no more rights than those granted by the statute."State v. Calhoun (1999), 86 Ohio St.3d 279, 281.
 {¶ 8} The Revised Code states:
Any person who has been convicted of a criminal offense * * * and whoclaims that there was such a denial or infringement of the person'srights as to render the judgment void or voidable under the OhioConstitution or the Constitution of the United States may file a petitionin the court that imposed sentence, stating the grounds for relief reliedupon, and asking the court to vacate or set aside the judgment or sentenceor to grant other appropriate relief. The petitioner may file asupporting affidavit and other documentary evidence in support of theclaim for relief.
R.C. 2953.21(A)(1). This section further provides that "[b]efore granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief." R.C. 2953.21(C).
In determining whether there are substantive grounds for relief to warrant a hearing,
the court shall consider, in addition to the petition, the supportingaffidavits, and the documentary evidence, all the files and recordspertaining to the proceedings against the petitioner, including, but notlimited to, the indictment, the court's journal entries, the journalizedrecords of the clerk of court, and the court reporter's transcript.
R.C. 2953.21(C). If the court determines that there are no substantive grounds for relief, it may dismiss the petition without an evidentiary hearing. See Calhoun, 86 Ohio St.3d at 282-283; State v. Cole (1982),2 Ohio St.3d 112; State v. Jackson (1980), 64 Ohio St.2d 107, 112. In a petition for postconviction relief which asserts ineffective assistance of counsel, "before a hearing is granted, `the petitioner bears the initial burden to submit evidentiary documents containing sufficient operativefacts to demonstrate the lack of competent counsel and that the defensewas prejudiced by counsel's ineffectiveness.'" Calhoun,86 Ohio St.3d at 283, quoting Jackson, 64 Ohio St.2d at syllabus. (Emphasis added inCalhoun.)
 {¶ 9} In reviewing the affidavits in support of the petition, the trial court "may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." Calhoun, 86 Ohio St.3d at 284. The Ohio Supreme Court has further stated that "[u]nlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction[.]" Id. Therefore, "[t]he trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." Id. However, affidavits are not to be lightly deemed false. Id. Rather, all relevant factors should be considered, such as "(1) whether the judge reviewing the postconviction relief petition also presided at the trial," (2) whether multiple affidavits contain nearly identical language so as to appear to be drafted by the same person, (3) whether hearsay is relied upon in the affidavits, (4) "whether the affiants are relatives of the petitioner," or otherwise interested in the petitioner's success, and (5) "whether the affidavits contradict evidence proffered by the defense at trial." Id. at 284-285.
 {¶ 10} The Court further noted that "not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents." Id. "Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." Id.
 {¶ 11} In the case sub judice, Saxton timely filed his petition for postconviction relief, asserting that he was entitled to relief because he received ineffective assistance of counsel during his trial. Specifically, Saxton contended that "trial counsel failed to adequately investigate physical evidence exculpating [him]." The exculpatory evidence to which Saxton referred in his petition was the gasoline evidence, particularly the traces of gasoline found on his denim shorts and shoes that were soaking in water and detergent in the bathtub. Saxton maintained that his trial counsel failed to investigate the diffusing effects of the detergent on gasoline and how this would have resulted in the presence of gasoline in the water as well as on the other articles of clothing in the tub. Saxton further asserted that had this evidence been fully investigated and presented to the jury, it would have strongly supported his theory that the shoes and shorts did not have gasoline on them when placed in the tub, but rather that the gasoline was placed on them due to the improper collection and handling of these items by the police.
 {¶ 12} In support of his petition, Saxton submitted the affidavit of Dr. Jay Siegel, a professor of forensic science at Michigan State University. In his affidavit, Dr. Siegel stated that detergent diffuses gasoline and that this diffusion effect, given the facts of this case and the method by which the clothes were collected by the police, would render the likelihood that the shoes and/or denim shorts had gasoline on them when placed in the tub with the other items highly improbable. In short, Dr. Siegel opined that gasoline would most likely have been discovered in the water and other articles of clothing if gasoline were on the shoes and shorts at the time they were put in the tub because the detergent would have broken down the gasoline, dispersing it into the water. Dr. Siegel further stated that it was "unreasonable for a person analyzing the presence of gasoline on the shoes and shorts not to consider the diffusing effects of detergent on gasoline." Thus, Saxton contended that trial counsel should have investigated the effects of detergent on gasoline and that they rendered ineffective assistance by failing to do so. We disagree.
 {¶ 13} When a claim of ineffective assistance of counsel is made, the Ohio Supreme Court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71, 79; see, also, Calhoun,86 Ohio St.3d at 289. In making this determination, the Court has adopted a two-part test established by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668. See State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Jones
(Sept. 27, 2000), Auglaize App. No. 02-2000-07, unreported, 2000 WL 1420271, quoting Strickland, 466 U.S. at 688, 694.
 {¶ 14} As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley,42 Ohio St.3d at 142. Further, we are also guided by the presumption that attorneys licensed by the State of Ohio "provide competent representation." Jones, supra, citing State v. Hoffman (1998),129 Ohio App.3d 403, 407. The second prong then requires a probability sufficient to undermine the confidence in the outcome of the proceedings. Jones, supra.
 {¶ 15} As noted, Saxton's petition claimed that counsel should have investigated the diffusing effects of detergent on gasoline. However, the Ohio Supreme Court has previously determined that it is reasonable for counsel to defer to an expert's professional judgment regarding matters seemingly within the realm of knowledge of the expert. State v. McGuire
(1997), 80 Ohio St.3d 390, 399. In his deposition, Robert Wilson, the lead trial attorney for Saxton,[2] testified that he obtained Larry Dehus, a forensic scientist with whom he had consulted on other trials, as an expert for Saxton's trial. He informed Dehus of the evidence against his client, including the collection of clothing in the water and detergent filled bathtub. He also expressed concern to Dehus about the absence of gasoline on the other items present in the bath with the shorts and shoes. Dehus reviewed the stack of discovery materials provided to the defense by the State, reviewed the physical evidence in the case, conducted an independent inspection and examination of the evidence, and reviewed the gas chromatograph printouts. Dehus also aided in the formulation of cross-examination questions by Attorney Wilson for the State's experts and discussed the possibility of cross-contamination of the clothing found in the bath with Attorney Wilson.
 {¶ 16} During trial, Dehus testified that he had a Masters in Biology, attended forensic courses at the F.B.I. Academy, was certified in fire origin, investigation and explosions, had taught many courses in criminalistics and forensic science, and had been a forensic scientist since 1974, including ten years of employment with the Miami Valley Regional Crime Laboratory, a full service police crime lab, before starting his own business specializing in forensic work. Although Dehus and both attorneys for Saxton worked numerous hours preparing for this case, Attorney Wilson testified that Dehus never expressed any opinions to him about the effects on gasoline that the detergent may have had. He also testified that he would have pursued this issue further had Dehus told him about the diffusing effect but that "he relied on his expert advice in that area." We find that such reliance by counsel was wholly within reason.
 {¶ 17} The primary purpose of obtaining a scientific expert in cases wherein forensics are of key importance is to aid the defense in understanding matters beyond the knowledge or experience possessed by lay persons in the field of science, such as the diffusing effects of detergent on gasoline. See, e.g., Evid. R. 702. Trial counsel requested authorization by the court to obtain an expert to assist in the scientific aspects of the investigation and preparation of Saxton's case, which was granted by the court. Thereafter, the services of Dehus, a former forensic scientist relied upon by police agencies in the Miami Valley area, were acquired by Attorney Wilson, who had used Dehus in numerous other cases. Dehus was requested and was permitted to review and examine, inter alia, all items found in Saxton's bathtub and was made well aware of the presence of Purex detergent in the tub. Given the complexities of science and the particular circumstances of this case, trial counsel reasonably relied upon their expert regarding these pieces of evidence.
 {¶ 18} At trial, Dehus testified as to the expectation that gasoline should have been found in other items in the tub, criticized the methods used by law enforcement to collect the evidence, and specifically suggested that these law enforcement officers may well have contaminated the items with gasoline from the crime scene after they were removed from the tub at the defendant's house. Thus, the difference between Dr. Siegel and Dehus essentially comes down to the fact that Dehus testified that "significant" contamination of gasoline on the shoes and shorts in the tub would be expected to carry over to the other items in the tub, while the affidavit of Dr. Siegel implies that "any" contamination of gasoline on the shoes and shorts in the tub would be expected to have this result.
 {¶ 19} While Dr. Siegel's version presents a somewhat stronger opinion as to the science, the essential defense point of potential police contamination of the evidence, supported by expert scientific testimony, was presented to the jury in this case. This was accomplished as a direct result of the efforts of trial counsel, both in investigating the scientific aspects of the case with an expert witness and in presenting the results of that investigation effectively to the jury via the testimony of that expert. As a result, it is our view that any difference between the testimony of Dehus and the affidavit of Dr. Siegel relates more to the potential effectiveness of the experts rather than the ineffectiveness of trial counsel. Moreover, it is our view that to rule otherwise in this case would elevate a defense counsel's duty of representation to an untenable standard, subject to the second-guessing and twenty-twenty hindsight of post-trial scientific experts in every major criminal case.
 {¶ 20} Thus, even if all the statements in Dr. Siegel's affidavit were accepted by the trial court as true, it and the arguments in the petition did not rise to the level of demonstrating that a constitutional violation occurred. Accordingly, Saxton failed to meet his initial burden of demonstrating substantial grounds for relief, i.e., the lack of competent counsel and that he was prejudiced by counsel's ineffectiveness.
 {¶ 21} Last, we note that Saxton also asserts in his brief to this Court that counsel was ineffective for failing to investigate the qualifications of Dehus. However, Saxton failed to put forth this assertion in his petition and also failed to present any evidence to demonstrate that Dehus was unqualified. Thus, this assertion is not properly before us. Nevertheless, the trial record reveals evidence contrary to Saxton's contention. For instance, the record demonstrates that Dehus was qualified in forensics and, particularly, fire investigation. Furthermore, the additional allegations of Saxton regarding Dehus' rejection from forensic academies and the like were unsubstantiated. In fact, the only "evidence" pertaining to these allegations was that Attorney Wilson was aware that one of the State's experts, Michelle Yezzo, had written a letter to one forensic academy questioning Dehus' fitness to be a member of that academy, but no evidence of any rejection from this or any other academy was submitted. Thus, even if this issue had been raised to the trial court, Saxton failed to meet his burden of presenting affidavit(s) and/or documentary evidence in support of this assertion.
 {¶ 22} For these reasons, the trial court did not err in dismissing Saxton's petition for post-conviction relief without an evidentiary hearing. Thus, the assignment of error is overruled, and the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.
Judgment affirmed.
Cupp, J., concurs.
 Bryant, J., dissents.
[1] An opinion deciding this appeal was first issued as State v.Saxton, 3rd Dist. No. 9-03-43, 2004-Ohio-811, 2004 WL 326732. However, upon granting a subsequent motion for reconsideration, we have vacated that decision and replaced it with the following opinion.
[2] Saxton was represented by two attorneys at trial, Robert Wilson and Javier Armengau. However, no evidence was obtained from Armengau for this petition.